# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MICHAEL D. FERGUSON,        )
                                )
        Plaintiff,       )
                                )
     v.                   )      No. 4:15CV1482 RLW
                                )
CAROLYN W. COLVIN,         )
Acting Commissioner of Social Security,   )
                                )
        Defendant.     )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of

Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI")

under Title XVI of the Act. For the reasons set forth below, the Court reverses the decision of

the Commissioner and remands for further proceedings.

## I. Procedural History

On May 20, 2011, Plaintiff filed an application for DIB alleging disability beginning

November 1, 2009.[1] (Tr. 22, 139-42) He protectively filed an application for SSI on March 31,

2011. (Tr. 22, 657-61) Plaintiff alleged that he became unable to work due to seizures. (Tr.

103) The applications were denied, and Plaintiff filed a request for a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 116, 123-27, 651-54) Plaintiff later withdrew his

request for a hearing and asked that the Disability Determinations Service reconsider his

application in light of new evidence. (Tr. 48, 117-20, 650) Upon reconsideration, Plaintiff's

---

[1] In the decision, the ALJ noted that Plaintiff had filed multiple applications with two different alleged onset dates, October 1, 2007 and November 1, 2009. Giving the Plaintiff the benefit of the doubt, the ALJ used the earlier alleged onset date of October 1, 2007. (Tr. 22)

applications were again denied, and he filed another request for a hearing by an ALJ. (Tr. 48, 101-06, 638-46) On October 23, 2013 and June 3, 2014, Plaintiff testified at hearings before the ALJ. (Tr. 664-704) On August 20, 2014, the ALJ determined that Plaintiff had not been under a disability from October 1, 2007, through the date of the decision. (Tr. 22-36) Plaintiff then filed a request for review, and on September 18, 2015, the Appeals Council denied Plaintiff's request after considering additional evidence. (Tr. 3-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the October 23, 2013 hearing, Plaintiff was represented by counsel. At the outset, the ALJ and counsel agreed that Plaintiff's alleged onset date was October 1, 2007, with a last insured date of March 31, 2010. Plaintiff's attorney stated that Plaintiff had a seizure condition which met the seizure listing and that Plaintiff's seizures continued to occur despite medication compliance. In addition, counsel stated that Plaintiff had a dramatic decline in his intellectual capacity. The ALJ planned to order a psychological consultative exam with an IQ test and other testing. (Tr. 666-74)

Upon questioning by the ALJ, Plaintiff testified that he was 53 years old. He had a driver's license and could drive, but his doctor told him not to drive. Plaintiff had a high school diploma but did not attend college. He last worked about five years ago, helping his brother-in-law do some things around his property. Plaintiff's employment history included work as a plaster contractor for 25 years. He first worked for his uncle's plaster company and then went into business on his own for about 10 years. Plaintiff stopped working as a major plaster finisher about four or five years ago and sold most of his equipment. (Tr. 677-80)

Plaintiff saw Dr. Conti and Dr. Renfert. He took Dilantin for seizures and Divalproex for depression. Plaintiff took his medication as prescribed and stated that the medication helped. Side effects included constant headaches and hair loss. Plaintiff testified that he experienced seizures every day. He lived with his wife. Plaintiff tried to stay busy around the house by performing household chores such as vacuuming. He could pull weeds in the yard. Plaintiff enjoyed reading *Sports Illustrated* magazine and the newspaper. He needed glasses to read. (Tr. 680-83)

Plaintiff's attorney also questioned him. Plaintiff stated that he had trouble understanding and remembering articles he read. In addition, he needed reminders from his wife and daughters to groom himself. His wife became ill six months ago, and his daughter moved in to care for both parents. Plaintiff further stated that when his wife began chemotherapy treatment, they had to get rid of their dog because he was unable to care for the dog. Plaintiff stated that he could not remember to let the dog out or feed the dog. He could not remember appointments or tasks, and he testified that his daughter attended appointments and meetings with him. Other people helped him remember things. Plaintiff testified that he could not make a fist with his right hand because he burned it years ago. He could not remember which year, but he recalled that he had a seizure during the incident. Plaintiff took medication for depression, which began about three or four years ago. With regard to his seizures, Plaintiff stated that he experienced large and small seizures. He lost consciousness with the large seizures, which lasted around 15 to 20 minutes. He had these large seizures at least a couple times a week. (Tr. 683-87)

At the second hearing held on June 3, 2014, Plaintiff's attorney submitted new evidence. The ALJ then questioned a vocational expert ("VE"), Tracy Young. The VE testified that

Plaintiff previously worked as a plasterer, which was classified as a medium skilled job. However, the job was heavy to very heavy, as performed by Plaintiff. In addition, he worked as a construction laborer, which was a very heavy, unskilled job. The ALJ discussed the psychological evaluation, noting that Plaintiff's seizures produced psychological consequences and a decrease in his IQ. However, the evidence did not indicate whether the psychological deficits occurred prior to the date last insured. (Tr. 694-98)

The ALJ then asked the VE to assume an individual of Plaintiff's age, education, and work experience. The person could perform at the light exertional level but could have no exposure to hazards, such as unprotected heights and moving mechanical parts. In addition, the person could never climb ladders or scaffolds, and he could not operate a motorized vehicle. Further, the individual was limited to understanding, remembering, and carrying out simple instructions. He retained the ability to make judgment on simple, work-related decisions but was unable to understand and remember complex instructions or make judgment on complex work-related decisions. Further, the person could only tolerate occasional change in the work setting. Given this hypothetical question, the VE stated that the person would not be able to perform any of Plaintiff's past work. However, the individual could work as a cafeteria worker, fountain server, or collator operator. (Tr. 698-99)

For the next hypothetical, the ALJ asked the VE to assume all of the limitations in the first hypothetical, with the additional limitation that the person's performance would be about 20 percent slower than a normal person's performance. In light of this limitation, the VE testified that the person would not be able to perform the previously mentioned jobs. Further, the individual would be unable to perform any competitive employment. In addition, Plaintiff's counsel asked the VE to also assume an individual that could reach, handle and finger with one

4

hand on an unlimited basis, but could only use the other hand rarely. The VE stated that the person could not perform any jobs the VE mentioned. The VE further testified that if twice a week the person experienced unscheduled, 30-minute long breaks, during which time he had a staring spell, the individual would be unable to perform any of those occupations. (Tr. 699-703)

Plaintiff's wife completed a Function Report – Adult dated November 16, 2011, on behalf of Plaintiff. In the report, Plaintiff stated that a typical day included his wife giving him medication and making breakfast. Plaintiff then watched TV, read, played with the dog, and waited for his wife to return home to make lunch. In the afternoon, he waited for her to come home and make dinner, and he took his medication and watched TV before bed. Plaintiff showered while his wife was home. Plaintiff could no longer cook for himself because he had a seizure and burned his hand while cooking. He needed reminders to care for himself. In addition, his wife gave him medication twice a day because he was unable to remember to take it. Plaintiff did not cook due to seizures. He was able to fold laundry but had to be reminded to stay on task. He went outside several times a week. Plaintiff was unable to drive or go out alone due to seizures. Due to poor memory, Plaintiff could not handle money. Plaintiff explained that his memory had decreased since his seizures increased. He stated that he enjoyed watching sports and reading. He did not spend time with others because he feared having a seizure in public. He also became angry very easily. Plaintiff reported that his conditions affected his memory, ability to complete tasks, concentration, use of hands, and ability to get along with others. His dominant hand was burnt and weak. Plaintiff estimated that he could pay attention for 5 minutes and was unable to finish what he started. He could follow written instructions okay, but he had difficulty remembering spoken instructions. Plaintiff did not get along well with others, including bosses. Stress seemed to increase his seizures. (Tr. 183-90) Plaintiff had

previously completed a Function Report – Adult in June of 2011, which his wife and daughter filled out. The form was essentially the same as the one Plaintiff completed 5 months later. (Tr. 194-201)

### III. Medical Evidence

The relevant medical evidence that applies to Plaintiff's appeal is the consultative psychological evaluation and Medical Source Statement – Mental ("MSS-Mental") by Karen Hampton, Ph.D., licensed psychologist. On December 17, 2013, Dr. Hampton evaluated Plaintiff on behalf of Disability Determinations. She observed that Plaintiff had adequate hygiene and wore a glove on his right hand to reduce pain associated with a burn injury. Dr. Hampton noted no overt seizure activity or specific motor abnormalities. Plaintiff was a moderately reliable informant. Dr. Hampton administered the Wechsler Adult Intelligence Scale – 4th edition ("WAIS-IV"), the Wide Range Achievement Test – 4th edition ("WRAT-4"), and the Comprehensive Trail Making Test ("CTMT"). Plaintiff's wife informed Dr. Hampton that Plaintiff took Dilantin and Depakote for convulsions and Zoloft for depression. Plaintiff needed phone alarms to remember to take his medications. Plaintiff discussed his history of seizures and the anxiety and depression associated with his condition. (Tr. 528-30)

The Mental Status Exam demonstrated that Plaintiff was oriented throughout the evaluation without visible signs of seizure activity. The evaluation lasted three hours. Plaintiff was cooperative and exhibited motivated effort with some mild anxiety and typical range in affect. Dr. Hampton noted no overt or admitted signs of psychotic thought process. Plaintiff's short term recall for 3 words after a 5-minute delay was intact for 1 out of 3 words. After a second practice trial and a brief delay, he could accurately recall 2 out of 3 words. Immediate auditory recall was poor for an adult, as he could recall up to only 4 digits forward and 3 digits

backward. He struggled on lowest-to-highest re-sequencing and could only recall 3 in lowest-to-highest order. Plaintiff made errors in substituting numbers for the blanks in his recall. Plaintiff correctly recalled the date and the examiner's first, but not last, name. Plaintiff recalled his birthday and social security number, but at a hesitant pace. He was incorrect in mental math calculations for 1 and 2 step monetary math problems. Dr. Hampton further observed that Plaintiff's fund of information for historical information and current events was poor. Plaintiff was overly general when asked to describe what a named historical figure was famous for, and he had little or no recall when asked other long-term informational recall questions. Dr. Hampton noted that Plaintiff's judgment in safety situations and social reasoning was intact. However, he was unable to describe associations between concrete objects and abstract ideas. His level of insight was fair. (Tr. 530-32)

With regard to the WAIS-IV test, Dr. Hampton observed that Plaintiff showed decreased Verbal Comprehension abilities with lower than average subtest scores. Plaintiff demonstrated somewhat higher subtest scaled cores on non-verbal Perceptual Reasoning subtests that were in the low-average on Matrix Reasoning and average on Visual Puzzles. The Block Design subtest was the lowest of the Perceptual Reasoning subtests. In addition, Dr. Hampton noted that Plaintiff worked at a slower than average speed on timed Processing Speed subtests. Plaintiff could perform some mental addition and subtraction items correctly, but he could not think through 2-column subtraction or calculate harder multi-step math problems. Dr. Hampton opined that Plaintiff functioned in the low-average to borderline ranges of intellectual functioning. He had stronger non-verbal perceptual reasoning abilities but reduced abilities in other areas. His composite full IQ score was a 75, placing him in the 5th percentile. (Tr. 532-33, 535)

On the WRAT-4 test, Plaintiff was in the low-average range for Word Reading, Sentence Comprehension, and Math Computation. Dr. Hampton noted that Plaintiff's overall academic abilities were in the low-average range for Plaintiff's age and could be a decrease in cognitive functioning attributable to recurrent seizure activity. With regard to the CTMT, which tested divided attention and speed of cognitive processing, Plaintiff's speeds were fairly slow at and below the 10th percentile. His overall composite index speed was only in the 2nd percentile. (Tr. 533-34)

Dr. Hampton assessed depressive condition due to medical condition; borderline intellectual functioning; seizure disorder; and Global Assessment of Functioning ("GAF") score of 58. Dr. Hampton noted that Plaintiff's seizure disorder was not well-controlled, as he experienced breakthrough seizures despite anti-convulsant medications. She opined that Plaintiff was mildly impaired in his ability to understand and recall simple instructions; markedly impaired in his ability to understand and follow through with complex directions; moderately impaired in concentration; and markedly slow in pace as compared to other similar-age adults. His ability to adapt to social situations and work-like settings was relatively intact. However, he had a risk of decompensation in an increased stressful condition. Dr. Hampton did not believe that Plaintiff was capable of managing funds independently. (Tr. 534)

In the MSS-Mental, Dr. Hampton found mild restrictions in Plaintiff's ability to understand and remember simple instructions and to carry out simple instructions. She opined that Plaintiff was moderately impaired in his ability to make judgments on simple, work-related decisions. Dr. Hampton assessed marked restrictions in Plaintiff's ability to understand and remember complex instructions; carry out complex instructions; and make judgments on complex, work-related decisions. With regard to interaction with others, Dr. Hampton opined

that Plaintiff had mild restrictions in his ability to interact appropriately with the public, supervisors, and co-workers. He had moderate restrictions with regard to his ability to respond appropriately to usual work situations and changes in a routine work setting. Additionally, Dr. Hampton stated that Plaintiff's concentration was moderately impaired, and his pace was significantly impaired. Dr. Hampton cited to her full report for the factors supporting her assessment. She did not know when the limitations were first present. (Tr. 536-38)

### IV. The ALJ's Determination

In a decision dated August 20, 2014, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010. He had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date. The ALJ further found that Plaintiff had the severe impairments of a seizure disorder with headaches; borderline intellectual functioning; and depression. However, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-25)

After carefully considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except he could never climb ropes, ladders, or scaffolds; never be exposed to hazards such as unprotected heights or moving mechanical parts; and never operate a motorized vehicle. The ALJ further found that Plaintiff could only understand, carry out, and remember simple instructions. He could make judgments on simple, work-related decisions but could not remember complex work instructions or make complex work-related decisions. Plaintiff could tolerate only occasional change in the work setting. (Tr. 28-35)

The ALJ determined that Plaintiff was unable to perform any past relevant work. However, in light of his younger age on the alleged onset date, high school education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. Such jobs included cafeteria attendant, fountain server, and collator operator. Therefore, the ALJ concluded that Plaintiff had not been under a disability from October 1, 2007 through the date of the decision. (Tr. 35-36)

### V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as

the ALJ's decision falls within the available zone of choice.  An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted).  Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment.  *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record.  *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995).  It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence.  *Id*.

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to

plaintiff's complaints under the *Polaski*[2] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

Plaintiff argues that the ALJ erred by failing to include in the RFC a limitation reflecting Plaintiff's deficit in pace. Plaintiff contends that the ALJ did not properly account for Plaintiff's deficits in pace with specificity. In addition, Plaintiff asserts that the ALJ relied on the wrong hypothetical question in determining that Plaintiff was capable of performing unskilled work. Defendant argues that the ALJ properly accounted for Plaintiff's limitation in pace when assessing Plaintiff's RFC and that the ALJ's RFC finding was supported by substantial evidence and properly incorporated into the hypothetical question posed to the VE.

Plaintiff claims that, although the ALJ found that Plaintiff had a marked impairment with regard to concentration, persistence, or pace, the ALJ failed to specifically account for the concrete functional mental impairment consequences of Plaintiff's deficit in pace when determining Plaintiff's RFC and when presenting the hypothetical questions to the VE.

---

[2] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Defendant responds that the ALJ did not fail to consider Plaintiff's deficit in pace because the ALJ found Plaintiff could perform unskilled work, which accounts for this limitation.

Residual Functional Capacity is a medical question, and the ALJ's assessment must be supported by substantial evidence. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1). "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996) (emphasis present).

The ALJ has the responsibility of determining a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Sieveking v. Astrue*, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008) (quoting SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996)).

The Court finds, based upon the entire record, the ALJ did not properly account for Plaintiff's pace deficits in determining his RFC. While the ALJ determined that Plaintiff had marked limitations in concentration, persistence, and pace, the ALJ concluded that Plaintiff

could perform unskilled light work that required repetitive pace. (Tr. 35-36, 700-01) In the decision, the ALJ gave Dr. Hampton's opinion great weight. However, while Dr. Hampton did not indicate that Plaintiff's borderline intellectual functioning was completely disabling, she noted that his pace was markedly slow compared to other similar-age adults and that he was significantly impaired in pace. (Tr. 534, 537) The ALJ did not explicitly address Plaintiff's marked impairment in pace when determining his RFC.

The jobs identified by the ALJ and the VE as jobs which Plaintiff could perform were cafeteria attendant, fountain server, and collator operator. All three jobs require the performance of "repetitive work" or "continuously the same work, according to set procedures, sequence, or pace." (Detailed Job Specialty Reports, Pl.'s Exs. 1-3, ECF Nos. 12-1 to 12-3) Courts in this district have found that a limitation to "simple" tasks is insufficient to accommodate pace limitations. *See, e.g.*, *Cain v. Colvin*, No. 4:14 CV 772-DDN, 2015 WL 2092411, at *10 (E.D. Mo. May 5, 2015) ("[A]n individual, even when performing simple and repetitive jobs, may be required to have a persistence or pace element."); *Logan-Wilson v. Colvin*, No. 4:13-CV-1119-JAR, 2014 WL 4681459, at *6 (E.D. Mo. Sept. 19, 2014) ("While the tasks themselves may be simple and rote, the pace in which Plaintiff is to accomplish them is not accommodated by limitation [to simple instructions and non-detailed tasks]."). Thus, the Court holds that the ALJ's RFC finding is not supported by substantial evidence because he did not consider Plaintiff's pace impairment when assessing Plaintiff's RFC. *Logan-Wilson*, 2014 WL 468145, at *6.

Likewise, the hypothetical question presented to the VE did not account for Plaintiff's marked limitations with regard to pace. "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996) (citation omitted).

Further, "[a]n expert's testimony based upon an insufficient hypothetical question may not constitute substantial evidence to support a finding of no disability." *Id.* at 695 (citation omitted). Here, the hypothetical question posed to the VE did not include Plaintiff's pace limitation. Therefore, the Court will remand the case for the ALJ to consider Plaintiff's marked limitations in pace in determining Plaintiff's RFC and to submit a hypothetical to the VE that includes Plaintiff's "deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work." *Id.; see also Cain*, 2015 WL 2092411, at *11 (remanding the case for further consideration where "the ALJ did not account for all of plaintiff's limitations in concentration, persistence and pace in the hypotheticals that she posed to the VE, such that the VE could not properly determine plaintiff's ability to work in jobs available in the economy); *Logan-Wilson*, 2014 WL 468145, at *6 (remanding with directions that the ALJ re-evaluate the RFC with regard to Plaintiff's pace limitation).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this <u>15th</u> day of September, 2016.

<u>Ronnie L. White</u>

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**